UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GLENN THOMAS COLLINS, | ) |
| Petitioner, | ) |
| v. | ) No. 3:23-CV-387-JRG-JEM |
| WARDEN JOHNNY FITZ, | ) |
| Respondent. | ) |

## MEMORANDUM & ORDER

Now before the Court are (1) a pro se petition for habeas corpus relief under 28 U.S.C. § 2254 in which Petitioner, a state prisoner, challenges his two 1994 convictions for felony murder [Doc. 1] and (2) two motions from Petitioner regarding the proper Respondent and the status of this action [Docs. 18, 19]. As Petitioner's claims for § 2254 relief are untimely, Petitioner procedurally defaulted his § 2254 claims by not raising them to the Tennessee Court of Criminal Appeals ("TCCA") prior to filing this action, and Petitioner has not set forth a credible claim of actual innocence or otherwise shown that the Court can consider the merits of his claims, the Court will dismiss this action. Also, as the Court already directed the Clerk to name the proper Respondent [Doc. 9 p. 1 n.1] and the Clerk sent Petitioner a docket sheet in response to his status update request, Petitioner's pending motions [Docs. 18, 19] will be denied as moot.

**I.  BACKGROUND**

In the factual basis supporting his 1994 guilty plea[1] to two counts of felony murder during the perpetration of a robbery, Petitioner admitted, among other things: (1) that Petitioner and

---

[1] The plea agreement indicates that Petitioner entered a "best interest" plea pursuant to *North Carolina v. Alford* [Doc. 11-1 p. 18]. In *Alford*, the Supreme Court explained that the

William Edward Sawyer ("Sawyer") used "force and violence" to enter the residence of the two victims, Clarence and Mary Gallop, after which Petitioner and Sawyer took numerous items from the victims and "unlawfully assault[ed], beat, and str[uck]" both victims, who died as a result of the "beating and striking"; (2) if called to testify at Petitioner's trial, witnesses would state that they saw Petitioner and Sawyer enter the victims' residence and exit the residence with "wallets, checkbooks, checks, rings, necklaces, and lawful money" that they did not have when they entered; (3) that a witness would testify that he saw Petitioner exit the victims' residence wearing bloody clothing, with bloody knuckles, and carrying bloody towels; (4) that a witness would testify that after Petitioner exited the victims' residence, Petitioner told that witness that he "beat the old man" and Sawyer "kept kicking the old lady"; and (5) that Sawyer would testify at Petitioner's trial in accordance with an interview he gave to police [Doc. 11-1 p. 21–27]. Affidavits filed with the factual basis also indicate that victim Clarence Gallop died as a result of the beating underlying the charges against Petitioner [*Id.* at 25, 27].

Petitioner did not file a direct appeal of his convictions but did file an appeal of the denial of his petition for post-conviction relief with the TCCA [Doc. 11-5]. In this appeal, Petitioner asserted that (1) the trial judge erred in not recusing himself after appointing Petitioner an attorney who was not experienced in capital cases; (2) the trial court erred in denying Petitioner's motion for autopsy photographs and finding his guilty plea was not coerced without viewing that evidence; (3) the trial court erred in denying Petitioner's post-conviction petition without addressing his claim that police took an incriminating statement from him without his counsel; (4) the numerous changes in Petitioner's representation, the appointment of an attorney with no capital case

---

constitution permits an accused to plead guilty in his best interest, while professing his actual innocence. 400 U.S. 25, 31 (1970).

experience, and "the antagonistic and cavalier conduct of James A.H. Bell, Esq." cumulatively violated Petitioner's right to counsel [*See*, *generally*, *id.*]. The TCCA affirmed the post-conviction court's denial of the post-conviction petition [Doc. 11-7]. On October 11, 1999, the Tennessee Supreme Court denied review. *Collins v. State*, No. 03C01-9806-CR-00209, 1999 WL 446612 (Tenn. Crim. App. May 28, 1999), *perm. app. denied* (Tenn. Oct. 11, 1999).

Petitioner did not file any other collateral attack of his convictions until August 1, 2023, when he filed his § 2254 petition [Doc. 1 p. 11]. The Court liberally construes Petitioner's § 2254 petition to assert that (1) his counsel convinced him to plead guilty based on a report showing that hair at the crime scene belonged to his codefendant, which was later called into question; (2) he is actually innocent of the charges underlying his convictions; and (3) his guilty plea was unknowing and involuntary because it rests upon evidence that was unreliable and untrue, as well as misinformation, and this is due to the prosecution's suppression of evidence, the ineffective assistance of his counsel, and false evidence from his counsel [*Id.* at 1–10].

Respondent filed an answer asserting that the petition claims are time-barred and/or barred due to procedural default [Doc. 12], in support of which he filed the state court record [Doc. 13].

Petitioner then filed a supplement to the petition [Doc. 13], to which he attached (1) an August 3, 2015, letter from the Department of Justice ("DOJ") indicating that a lab report that previously connected hair evidence from the crime scene to Walker[2] "exceeded the limits of science" and (2) a March 11, 1992, transcript of an interview with a paramedic who took Mr. Gallop to the hospital, in which the paramedic states Mr. Gallop "was in bad shape but [] doing very well" when he arrived at the hospital, and that hospital personnel "probably, possibly"

---

[2] The letter attached to Petitioner supplement does not identify Walker as the person to whom the hair evidence in question belonged [Doc. 13-1], but Petitioner acknowledges in his petition that this is the case [Doc. 1 p. 2].

3

contributed to Mr. Gallop's death [Doc.13-1]. Respondent filed a response indicating that neither of these documents demonstrates that Petitioner's claims are timely or exhausted [Doc. 14].

II.     ANALYSIS

For the reasons set forth below, the Court agrees with Respondent that (1) Petitioner's § 2254 claims are time-barred; (2) Petitioner procedurally defaulted his § 2254 claims; and (3) Petitioner has not shown a credible claim of actual innocence or any other reason he could overcome the untimeliness of his § 2254 claims and/or his procedural default of those claims.

    A.     **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. § 2241, *et seq.*, provides a one-year statute of limitations for the filing of an application for a federal writ of habeas corpus. The statute provides in relevant part as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--
>
> (A)     the date on which the judgment became final by the conclusion of direct review . . . . or
>
> \*          \*          \*
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

As set forth above, after Petitioner entered a guilty plea to the relevant charges, he did not file a direct appeal of his convictions but did file an appeal of the denial of his petition for post-conviction relief with the TCCA [Doc. 11-5]. The TCCA affirmed the post-conviction court's denial of relief to Petitioner, and on October 11, 1999, the Tennessee Supreme Court denied review. *Collins,* 1999 WL 446612.

4

Petitioner did not file any other collateral attack of his convictions until nearly twenty-four years later, when he filed the instant § 2254 petition on August 1, 2023 [Doc. 1 p. 11], which is long after the one-year AEDPA statute of limitations had expired. Moreover, while Petitioner relies on both (1) an August 3, 2015, letter from the DOJ indicating that a lab report connecting Sawyer's hair to the scene of the underlying crimes "exceeded the limits of science" and (2) a March 11, 1992, transcript of an interview with a paramedic in which the paramedic states that actions of hospital personnel "probably, possibly" caused the death of Mr. Gallop [Doc.13-1] to support his claims for relief under § 2254, Petitioner does not state when he received these documents or present any evidence suggesting that he received these documents within a year of him filing the petition despite exercising due diligence, such that the Court could find that his claims arising from these documents are timely under 28 U.S.C. § 2244(d)(1)(D). Nor has Petitioner presented any reason that he may be entitled to equitable tolling of the statute of limitations for more than twenty years. *Graham-Humphreys v. Memphis Brooks Museum of Art. Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (providing that "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day").

As such, Petitioner's claims are untimely, and he has not demonstrated that he is entitled to equitable tolling of the statute of limitations.

### B. Procedural Default

Also, before a federal court may grant habeas corpus relief, the petitioner must have exhausted his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th

5

Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). For a petitioner to have exhausted a § 2254 claim, he must have presented "the same claim under the same theory" to the state courts. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process). If a prisoner never presented a claim to the highest state court and a state procedural rule now bars presentation of the claim, the claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991).

In Tennessee, presentation of a claim to the TCCA satisfies the requirement of presentation of the claim to all court levels. Tenn. S. Ct. R. 39. Also, Tennessee petitioners may generally proceed through only one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

Petitioner presented various claims challenging his convictions to the TCCA in his appeal of the denial of his petition for post-conviction relief [Doc. 11-5], which the record demonstrates is his only appeal of his relevant convictions. However, Petitioner did not present any of the claims from his § 2254 petition under the same theory to the TCCA in this appeal [*Compare* Doc. 1 *with* Doc. 11-5]. *Wagner*, 581 F.3d at 418 (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process for purposes of exhaustion).

Notably, in his petition, Petitioner attempts to overcome his procedural default of his § 2254 claims by asserting that his failure to raise these claims previously was the result of the prosecution suppressing and/or withholding documents [Doc. 1 p. 8–10]. The Due Process Clause of the Fourteenth Amendment requires that the state disclose to criminal defendants "evidence that

6

is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 97 (1963)). "Even in the absence of a specific request, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* at 485 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)). "A petitioner who proves a *Brady* violation demonstrates cause and prejudice to excuse procedural default of the *Brady* claim." *Brooks v. Tennessee*, 626 F.3d 878, 891 (6th Cir. 2010).

To establish a violation of *Brady*, a petitioner must show that the state withheld evidence that was material to his guilt or punishment. *Brady*, 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (internal quotation marks omitted).

Petitioner has not established that any *Brady* violation occurred in his case. As set forth above, Petitioner generally alleges in his petition that his guilty plea was unknowing and involuntary due to the prosecution's alleged suppression of documents. While Petitioner does not specify what documents he alleges the prosecution withheld from him, it appears that Petitioner asserts that the prosecution withheld (1) the 2015 DOJ letter stating that a previous lab report indicating that Sawyer's hair was found at the scene is subject to some unspecified level of scientific dispute, and (2) the transcript of the 1992 interview in which a paramedic opines that hospital staff actions "probably, possibly" caused the death of one of Mr. Gallop [Doc. 13-1]. But Petitioner has set forth no facts or evidence from which the Court can find that the prosecution suppressed these documents, or that these documents are material to Petitioner's guilt.

7

Specifically, Petitioner does not set forth any facts to support his implied assertion that the prosecution withheld the transcript of the 1992 interview from him, such as when he received a copy of the document. But even if the prosecution did not disclose this document to Petitioner before his guilty plea, the relevant portion of the paramedic's interview only speculates that actions of hospital staff may have contributed to the death of Mr. Gallop. Petitioner has not set forth any reason that this speculative and ambiguous statement from a paramedic regarding medical decisions of hospital providers was material to either his guilt for the relevant charges under Tennessee law or his decision to plead guilty, especially when viewed in light of the other overwhelming evidence of Petitioner's guilt set forth in the factual basis for his plea agreement [Doc. 11 p. 21–27].

Petitioner likewise has not demonstrated that the 2015 DOJ letter was withheld from him or is material to his guilt. Specifically, it is apparent from the date of this document that it did not exist until long after Petitioner pled guilty in 1994, and Petitioner sets forth no facts to support his implied assertion that the prosecution failed to timely provide this document to him. Moreover, while this letter calls into question whether Sawyer's hair was found at the crime scene, it does not cast doubt on Petitioner's guilt for the underlying offenses or his decision to plead guilty, especially given the other strong evidence of Petitioner's guilt in the record [*Id.*].

Accordingly, Petitioner procedurally defaulted his § 2254 claims, and he has not shown that any *Brady* violation allows him to overcome this default.

C.     **Actual Innocence**

For the reasons set forth above, Petitioner did not timely file his § 2254 petition claims, and he procedurally defaulted those claims. However, Petitioner asserts in the petition that he is actually innocent of the charges against him, and actual innocence, if proved, serves as a gateway

8

Case 3:23-cv-00387-JRG-JEM     Document 20     Filed 02/18/26     Page 8 of 11     PageID #: 559

through which Petitioner may obtain review of his otherwise barred or untimely § 2254 claims. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation and internal quotation marks omitted). Invocation of this exception requires a credible claim of innocence. *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012) (citing *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005)). To be credible, such a claim must be supported "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . ." *Schlup*, 513 U.S. at 324.

Petitioner has not presented a credible claim of actual innocence. As set forth above, in the factual basis for his guilty plea, Petitioner admitted, among other things: (1) that Petitioner and Sawyer used "force and violence" to enter the residence of the two victims, Clarence and Mary Gallop, after which Petitioner and Sawyer took numerous items from the victims and "unlawfully assault[ed], beat, and str[uck]" both victims, who died as a result of the "beating and striking"; (2) that witnesses would testify at Petitioner's trial that they saw Petitioner and Sawyer enter the victims' residence and exit the victims' residence with items that they did not have when they entered; (3) that a witness would testify that Petitioner had on bloody clothing, had bloody knuckles, and had bloody items when he left the victims' residence; and (4) that a witness would testify that after Petitioner exited the victims' residence, Petitioner told that witness that he "beat the old man" and Sawyer "kept kicking the old lady" [Doc. 11 p. 21–23]. The factual basis also established that Sawyer was willing to testify at Petitioner's trial [*Id.* at 23]. This is strong evidence of Petitioner's guilt of the charges to which he pled guilty.

Also, the only allegedly new evidence Petitioner presents to support his actual innocence claim are: (1) the DOJ letter suggesting that a prior lab report stating that Sawyer's hair was found at the crime scene "exceeded the limits of science" and is therefore subject to an unspecified level of dispute, and (2) a statement from a paramedic indicating that he believes that actions of hospital staff "probably, possibly" caused the death of Mr. Gallop [Doc. 13-1]. But while these two documents call into question whether Sawyer's hair was at the crime scene and whether actions of hospital staff also contributed to Mr. Gallop dying, Petitioner does not explain how, nor does the record suggest, this evidence renders him actually innocent of the felony murder charges to which he pled guilty, especially in light of the strong evidence of his guilt. *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024), *cert. denied sub nom. Hubbard v. Tanner*, 145 S. Ct. 1201, 221 L. Ed. 2d 271 (2025) (providing that "a petitioner may not pass through the [] [actual innocence] gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime."); *Williams v. Bagley*, 380 F.3d 932, 973-74 (6th Cir. 2004) ("Given the strong evidence of [Petitioner's] guilt[,] he "has not approached the 'actual innocence' standard."); *State v. Grose*, 982 S.W.2d 349, 352 (Tenn. Crim. App. 1997) (declining to consider the fact that the victim's family instructed medical personnel not to resuscitate the victim if she experienced certain health issues as a factor to mitigate the defendant's guilt because the defendant "began a chain of events which in their natural and probable sequence caused the victim's death").

Accordingly, Petitioner has not presented a claim of actual innocence that allows him to overcome the untimeliness of his claims or his procedural default of his claims.

### III. CERTIFICATE OF APPEALABILITY

Thus, the Court will dismiss this action as time-barred and due to Petitioner's procedural default of his claims, and it now must consider whether to issue a certificate of appealability

(COA), should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA should issue only where the petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). Where the district court rejects the § 2254 petition on a procedural basis, a COA shall issue only where "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485–86 (6th Cir. 2001). As reasonable jurists would not debate the Court's ruling that the § 2254 petition is time-barred and subject to dismissal due to the doctrine of procedural default, a COA will not issue.

## IV. CONCLUSION

Accordingly, for the reasons set forth above:

1. This action will be **DISMISSED** because the petition is time-barred and Petitioner procedurally defaulted his claims;

2. Petitioner's pending motions [Docs. 18, 19] are **DENIED as moot**;

3. A COA will not issue;

4. The Court **CERTIFIES** that any appeal in this matter would not be taken in good faith. 28 U.S.C. § 1915(a)(3); and

5. This action will be **DISMISSED**.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/ J. RONNIE GREER<br>**UNITED STATES DISTRICT JUDGE**